UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JAMES FERRARI,

                    Plaintiff,                    Case No 2:18-cv-125

v.                                                Honorable Janet T. Neff

JODY LEBARRE et al.,

                    Defendants.
_____/

## OPINION & ORDER

        This is a civil rights action brought by a state prisoner.  Under Federal Rule of Civil

Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been

misjoined.  Pursuant to that rule, the Court will drop as misjoined Defendants Geneman, Beesley,

Dushane, Mattice, Massie, Clisch, Kisse, LaChance, Clemo, Fink, Froberg, Johnson, Morgan (1st

Shift), Morgan (2nd Shift), Ricklard, Beauchamp, Wilson, Holma, Gibson, Velmer, Hill, Bauman,

and Cleary and dismiss Plaintiff's claims against them without prejudice.

### Discussion

I.        Factual allegations

        Plaintiff is presently incarcerated with the Michigan Department of Corrections

(MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan.  The

events about which he complains occurred at that facility and the Ionia Correctional Facility (ICF)

in Ionia, Ionia County, Michigan.

        Plaintiff sues MDOC Director Heidi Washington and MDOC Northern Region

Healthcare Manager Dr. William Borgerding, together with the following ICF officials:  Assistant

Resident Unit Supervisor (ARUS) Lloyd Thurlby; ICF Health Unit Manager (HUM) Jody LeBarre; and Nurse Joann Bunting. Plaintiff also sues the following AMF Officials: HUM Gloria Hill; Nurses Patricia Lamb and Aaron Jeffery; Medical Provider Kristine Nyquist; and Correctional Officers (unknown) Geneman, (unknown) Beesley, (unknown) Dushane, (unknown) Mattice, (unknown) Massie, (unknown) Clisch, (unknown) Kisse, (unknown) LaChance, (unknown) Clemo, (unknown) Fink, (unknown) Froberg, (unknown) Johnson, (unknown) Morgan (first shift), (unknown) Morgan (second shift), (unknown) Ricklard, (unknown) Beauchamp, (unknown) Wilson, (unknown) Holma, (unknown) Gibson, (unknown) Velmer, (unknown) Hill, (unknown) Bauman, and (unknown) Cleary.

Plaintiff's complaint is not a model of clarity. However, it appears to concern two broad sets of claims against different state officials at two different MDOC facilities. The first set of allegations involve Plaintiff's claims about the treatment and accommodation for his photophobia. Plaintiff alleges that he has had the condition, which makes him light sensitive to the point of triggering migraines and nausea, since he was 13 years old. Plaintiff used tinted glasses and sun shields from that age on, and he was able to obtain a detail for those items in the MDOC for many years.

On July 25, 2013, MDOC policy on providing tinted glasses changed, and all requests for such items thereafter had to be approved by the MDOC Chief Medical Officer. In addition, at some point in time, Plaintiff's medical condition no longer met the qualifying criteria for a tinted-glasses medical accommodation. (*See* Compl., ECF No. 1, PageID.4, 6; AMF-1608-1901-12G1 Step-II Grievance Response, ECF No. 1-1, PageID.20.)

Plaintiff alleges that, sometime in 2015, while he was still housed at ICF, he was informed that he no longer had an active special accommodation order (a detail) to possess tinted

prescription glasses.[1]  On December 16, 2015, Defendant Thurlby ordered officers to handcuff Plaintiff, take him out of his cell, and search the cell.  During the cell search, the officers confiscated Plaintiff's MDOC-provided tinted prescription glasses, as well as the tinted prescription glasses that Plaintiff personally had purchased for $61.05.  Since that time, Plaintiff has suffered chronic migraine pain and nausea, as well as itching and burning eyes.  Defendant Bunting reviewed the grievance at Step I, indicating that Plaintiff had refused to be interviewed on the grievance.  (ICF-2015-12-2366-12G Step-I Grievance Response, ECF No. 1-1, PageID.23.)  On January 6, 2016, Bunting denied his grievance, noting that Plaintiff's last medical detail was written on December 22, 2013, with an end date of June 22, 2014.  (*Id.*)  Bunting also indicated that the optometrist had reviewed Plaintiff's chart on July 11, 2014, and determined that Plaintiff was no longer eligible for tinted lenses.  (*Id.*)  Defendant LeBarre authorized the grievance response, stating that Plaintiff's glasses had been received by health services, but they were subsequently lost.  Plaintiff contends that they were thrown away.  Plaintiff alleges that both Bunting and Le Barre had the authority to return his glasses, but they denied his grievance, indicating that Plaintiff's detail for the glasses had expired.

Plaintiff arrived at AMF on July 13, 2016.  On August 8, 2016, Defendant Dr. Nyquist apparently issued Plaintiff a medical detail for tinted glasses, and Plaintiff ordered a pair of tinted glasses at his own expense.  The order was cancelled, because it was not issued by Defendant Borgerding or the eye doctor.  Plaintiff filed a grievance, complaining that, even when an eye doctor made the recommendation, Plaintiff did not get an authorization for tinted glasses.  After Plaintiff had made a personal order for glasses, Defendant Nyquist informed him, "You

---

[1] According to the Step II Response to his AMF grievance dated September 16, 2016, he was first informed by an ICF optometrist that he no longer qualified for tinted lenses on January 21, 2015.  (Step II Grievance Response, ECF No. 1-1, PageID.20.)

shouldn[']t have filed a grievance.  Now your detail is being cancelled and you[']re] not getting your glasses you ordered."  (*Id.*, PageID.8.)

On January 4, 2017, Plaintiff was seen by an eye doctor at AMF.  The doctor put in a request for tinted glasses.  That request was denied by Defendant Borgerding on January 5, 2017, because photophobia was not a sufficient reason to prescribe tinted glasses.  Plaintiff argues that the MDOC policy of allowing Dr. Borgerding, who is not an eye specialist, to overrule the eye doctor's recommendation is outrageous and deprives Plaintiff of his Eighth Amendment right to adequate treatment of his medical issues. Plaintiff filed a grievance.  Plaintiff complains that Defendants Jeffery, Lamb, and Hill all responded to his grievances, but they did not restore his glasses detail and did not return his glasses to him (saying that the glasses had been lost).

Plaintiff alleges that he filed a grievance against Defendant Washington, while he was still housed at ICF.  The Step-III grievance was never answered by Washington or her office. Plaintiff alleges that Defendant Washington is responsible for all policies, rules, and procedures, which affected Plaintiff's ability to obtain tinted lenses.

In supplemental allegations to the complaint, Plaintiff contends that both health care nurses and correctional officers retaliated against him for filing grievances.  Plaintiff alleges that, when he arrived at AMF on July 13, 2016, correctional officers confiscated his prescription glasses because his accommodation had expired.  Plaintiff was placed in segregation.  Nurses make rounds once each day in segregation, and officers make rounds every 30 minutes.  When making a round, the officers and nurses use a small metal flashlight to shine a sensor disc on the door, which records the visit.  However, neither the officers nor the nurses need to actually look in the cell to log their visits.  Plaintiff filed a grievance about this practice.  A few days later, in the early morning hours, Plaintiff was awakened by loud banging on his door.  He got up, went to the door,

and saw a nurse across the hall, making her rounds. Plaintiff argues that the nurse banged on his door because he filed a grievance. Since that time, the other nurse and officers on all three shifts routinely bang on Plaintiff's door every time they do their rounds, preventing Plaintiff from sleeping. Plaintiff claims that the actions are retaliatory and amount to torture. Plaintiff alleges that he talked to the counselors, but they did not want to hear his complaints. When he tried to tell the warden during rounds, the warden took his flashlight and banged the door twice before walking away.

Plaintiff complained to Defendant Gibson that the segregation officers train all new officers on the unit to continue the harassing practice of banging his door. Defendant Gibson got mad and confiscated Plaintiff's television, stating that Plaintiff had engaged in "negative behavior[]r." (*Id.*, PageID.13.) Plaintiff alleges that he has only listed some of the actions taken by staff, and he contends that the harassing conduct is going to get worse. As support for his fear of escalation, he states that AMF officers allowed a segregation prisoner to starve to death in 2003 or 2004 and that other AMF officials covered it up.

Plaintiff adds a few other allegations at the end of his complaint: on a handful of occasions, Defendants Geneman and Beesley refused to either give him a razor or let him use J-Pay or the store kiosk; he has complained to the counselor on his unit, who refuses to take action; the remaining officers listed in the complaint have engaged in unspecified retaliation and harassment.

In addition, in several proposed amendments or supplements to his complaint (ECF Nos. 9, 10, 13), Plaintiff provides lists of additional Defendants he wishes to add to his complaint, though he makes no specific allegations against them.

II.     Misjoinder

The joinder of claims, parties, and remedies is "strongly encouraged" when appropriate to further judicial economy and fairness. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This does not mean, however, that parties should be given free rein to join multiple plaintiffs and multiple defendants into a single lawsuit when the claims are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report).

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of

them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor*, 661 F. Supp. 2d at 778, and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the

dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike"

under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should his claims turn out to be frivolous.

Plaintiff names Defendants LeBarre, Thurlby, Hill, Lamb, Nyquist, Bunting, Borgerding, Washington, and Jeffery as having some kind of involvement in the failure to treat his eye condition, the termination of his tinted-glasses detail, the taking of his glasses, or denying his grievances about those things. These nine Defendants are also the first defendants named in the action. Although the claims about his tinted lenses occurred at two separate facilities, the Court construes them as being part of a single course of action that interfered with the treatment of his eye condition. As a consequence, the Court considers the claims against Defendants LeBarre, Thurlby, Hill, Lamb, Nyquist, Bunting, Borgerding, Washington, and Jeffery as sufficiently related to be included as part of the same complaint.

However, the claims against the remaining Defendants are unrelated to the claims against Defendants LeBarre, Thurlby, Hill, Lamb, Nyquist, Bunting, Borgerding, Washington, and Jeffery. They do not arise from the same transactions, and there is no overlap with respect to the individuals involved or the circumstances under which the issues occurred. Accordingly, the claims against the remaining Defendants are not properly joined.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts

with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings his causes of action against the improperly joined defendants under 42 U.S.C. § 1983 and state law. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of the remaining actions about which Plaintiff complains occurred after Plaintiff arrived at AMF in July 2016, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dropped and the claims against them are dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and drop all Defendants other than LeBarre, Thurlby, Hill, Lamb, Nyquist, Bunting, Borgerding, Washington, and Jeffery from the action, and dismiss Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits by Plaintiff.[2] *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

In addition, Plaintiff's attempts to add Defendants as set forth in his motion to amend (ECF No. 9) and supplements (ECF Nos. 10, 13), will be denied, because Plaintiff has utterly failed to allege any conduct by the newly listed Defendants.

Accordingly,

**IT IS ORDERED** that Defendants Geneman, Beesley, Dushane, Mattice, Massie, Clisch, Kisse, LaChance, Clemo, Fink, Froberg, Johnson, Morgan (1st Shift), Morgan (2nd Shift), Ricklard, Beauchamp, Wilson, Holma, Gibson, Velmer, Hill, Bauman, and Cleary will be **DROPPED** from this action because they are misjoined, and Plaintiff's claims against them will be **DISMISSED WITHOUT PREJUDICE**.

---

[2] Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another.

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend (ECF No. 9) is

**DENIED**, and his supplements to the complaint (ECF Nos. 10, 13) are **REJECTED**.


Dated:   December 17, 2018                              /s/ Janet T. Neff
                                                       Janet T. Neff
                                                       United States District Judge