UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JAMES FERRARI,

        Plaintiff,

v.

JODY LEBARRE et al.,

        Defendants.
_____/

Case No. 2:18-cv-125

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants LeBarre, Hill, Lamb, Bunting, Jeffery, Washington, Thurlby, and Nyquist.

## Discussion

    I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The

events about which he complains occurred at that facility and the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff initially sues MDOC Director Heidi Washington and MDOC Northern Region Healthcare Manager Dr. William Borgerding, together with the following ICF officials: Assistant Resident Unit Supervisor (ARUS) Lloyd Thurlby; ICF Health Unit Manager (HUM) Jody LeBarre; and Nurse Joann Bunting. Plaintiff also sues the following AMF Officials: HUM Gloria Hill; Nurses Patricia Lamb and Aaron Jeffery; Medical Provider Kristine Nyquist; and Correctional Officers (unknown) Geneman, (unknown) Beesley, (unknown) Dushane, (unknown) Mattice, (unknown) Massie, (unknown) Clisch, (unknown) Kisse, (unknown) LaChance, (unknown) Clemo, (unknown) Fink, (unknown) Froberg, (unknown) Johnson, (unknown) Morgan (first shift), (unknown) Morgan (second shift), (unknown) Ricklard, (unknown) Beauchamp, (unknown) Wilson, (unknown) Holma, (unknown) Gibson, (unknown) Velmer, (unknown) Hill, (unknown) Bauman, and (unknown) Cleary.

In an earlier opinion and order, this Court concluded that the claims against Defendants Geneman, Beesley, Dushane, Mattice, Massie, Clisch, Kisse, LaChance, Clemo, Fink, Froberg, Johnson, Morgan (1st Shift), Morgan (2nd Shift), Ricklard, Beauchamp, Wilson, Holma, Gibson, Velmer, Hill, Bauman, and Cleary were improperly joined in the action. The Court therefore dropped these 23 misjoined Defendants and dismissed Plaintiff's claims against them without prejudice. As a consequence, the Court will now consider only the claims against the remaining nine Defendants: LeBarre, Thurlby, Hill, Lamb, Nyquist, Bunting, Borgerding, Washington, and Jeffery.

As the Court noted in its earlier opinion and order, Plaintiff's complaint is not a model of clarity. The remainder of the claims and Defendants have to do with the treatment of and accommodation for his photophobia. Plaintiff alleges that he has had the condition, which

makes him light sensitive to the point of triggering migraines and nausea, since he was 13 years old. Plaintiff used tinted glasses and sun shields from that age on, and he was able to obtain a detail for those items in the MDOC for many years.

Plaintiff alleges that, sometime in 2015, while he was still housed at ICF, he was informed that he no longer had an active special accommodation order (a detail) to possess tinted prescription glasses.[1] On December 16, 2015. Defendant Thurlby ordered officers to handcuff Plaintiff, take him out of his cell, and search the cell. During the cell search, the officers confiscated Plaintiff's MDOC-provided tinted prescription glasses, as well as the tinted prescription glasses that Plaintiff personally had purchased for $61.05. Since that time, Plaintiff has suffered chronic migraine pain and nausea, as well as itching and burning eyes. Defendant Bunting reviewed the grievance at Step I, indicating that Plaintiff had refused to be interviewed on the grievance. (ICF-2015-12-2366-12G Step-I Grievance Response, ECF No. 1-1, PageID.23.) On January 6, 2016, Bunting denied his grievance, noting that Plaintiff's last medical detail was written on December 22, 2013, with an end date of June 22, 2014. (*Id.*) Bunting also indicated that the optometrist had reviewed Plaintiff's chart on July 11, 2014 and determined that Plaintiff was no longer eligible for tinted lenses. (*Id.*) Defendant LeBarre authorized the grievance response, stating that Plaintiff's glasses had been received by health services, but they were subsequently lost. Plaintiff contends that they were thrown away. Plaintiff alleges that both Bunting and LeBarre had the authority to return his glasses, but they denied his grievance, indicating that Plaintiff's detail for the glasses had expired.

---

[1] According to the Step II Response to his AMF grievance dated September 16, 2016, he was first informed by an ICF optometrist that he no longer qualified for tinted lenses on January 21, 2015. (Step II Grievance Response, ECF No. 1-1, PageID.20.)

Plaintiff arrived at AMF on July 13, 2016. On August 8, 2016, Defendant Dr. Nyquist apparently issued Plaintiff a medical detail for tinted glasses, and Plaintiff ordered a pair of tinted glasses at his own expense. The order was cancelled, because it was not issued by Defendant Borgerding or the eye doctor. Plaintiff filed a grievance, complaining that, even when an eye doctor made the recommendation, Plaintiff did not get an authorization for tinted glasses. After Plaintiff had made a personal order for glasses, Defendant Nyquist informed him, "You shouldn[']t have filed a grievance. Now your detail is being cancelled and you['re] not getting your glasses you ordered." (*Id.*, PageID.8.)

On January 4, 2017, Plaintiff was seen by an eye doctor at AMF. The doctor put in a request for tinted glasses. That request was denied by Defendant Borgerding on January 5, 2017, because photophobia was not a sufficient reason to prescribe tinted glasses. Plaintiff argues that the MDOC policy of allowing Dr. Borgerding, who is not an eye specialist, to overrule the eye doctor's recommendation is outrageous and deprives Plaintiff of his Eighth Amendment right to adequate treatment of his medical issues. Plaintiff filed a grievance. Plaintiff complains that Defendants Jeffery, Lamb, and Hill all responded to his grievances, but they did not restore his glasses detail and did not return his glasses to him (saying that the glasses had been lost).

Plaintiff alleges that he filed a grievance against Defendant Washington, while he was still housed at ICF. The Step-III grievance was never answered by Washington or her office. Plaintiff alleges that Defendant Washington is responsible for all policies, rules, and procedures, which affected Plaintiff's ability to obtain tinted lenses.

Plaintiff seeks injunctive relief in the form of the right to wear and possess tinted glasses at the expense of the MDOC throughout the rest of his period of incarceration. He also seeks compensatory damages for every day he has suffered without his tinted glasses.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants LeBarre, Hill, Lamb, Bunting, Jeffery & Washington

Plaintiff fails to make specific factual allegations against Defendants LeBarre, Hill, Lamb, Bunting, and Jeffery, other than his claim that they failed to resolve his grievances in the manner he would have liked. Plaintiff's only allegation against Defendant Washington is that, as MDOC Director, she is responsible for all MDOC policies and procedures, including medical policies, which resulted in the loss of his tinted lenses.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants LeBarre, Hill, Lamb, Bunting, Jeffery, and Washington

engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Defendant Thurlby

Plaintiff alleges that Defendant Thurlby ordered that Plaintiff's cell be searched and that, during the search, Plaintiff's tinted glasses were confiscated. Plaintiff appears to allege that Defendant Thurlby's actions amounted to a taking of Plaintiff's property without due process and violated Plaintiff's Eighth Amendment rights.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive

04.07.112, ¶ B (effective Dec. 12, 2013).² Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state a due process claim against Defendant Thurlby.

Moroever, Plaintiff's allegations fall short of stating an Eighth Amendment claim against Defendant Thurlby. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial

---

² In the Step-I grievance response, Plaintiff was encouraged to apply for reimbursement under MDOC Policy Directives 04.07.112 and 03.02.131.

risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Even assuming that the lack of tinted lenses created a substantial risk of serious harm to Plaintiff, Plaintiff's allegations fail to demonstrate that Defendant Thurlby, a custody officer, was aware that taking Plaintiff's tinted lenses would create such a risk. Although Plaintiff contends that his medical accommodation for tinted lenses should not have expired in 2014, he acknowledges that he was aware that his tinted-lens detail had expired months before Thurlby took his glasses. Defendant Thurlby therefore was aware that medical personnel had not deemed Plaintiff's need for tinted lenses to be medically necessary. Under these circumstances, Plaintiff

9

cannot demonstrate that Defendant Thurlby possessed the culpable state of mind necessary to an Eighth Amendment claim.

### C. Defendant Nyquist

Plaintiff alleges that Defendant Nyquist issued a detail for Plaintiff to possess tinted glasses on August 8, 2016, after which Plaintiff ordered new glasses. In the interim, Plaintiff had filed a grievance about Defendant Thurlby's taking of his tinted glasses. Upon review of the grievance, Plaintiff's detail (authorized by Defendant Nyquist) to possess tinted glasses was cancelled, and he was not permitted to possess the glasses he had ordered. Defendant Nyquist informed Plaintiff that he should not have filed a grievance, because it resulted in his tinted-glasses detail being cancelled. Finally, Plaintiff alleges that Defendant Nyquist reviewed and denied one of his grievances.

To the extent that Plaintiff complains that Defendant Nyquist denied his grievance, Plaintiff fails to state a claim. As previously discussed, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Nor has Plaintiff alleged an Eighth Amendment claim against Defendant Nyquist. According to Plaintiff's allegations, Nyquist issued Plaintiff a detail for tinted glasses. The detail was cancelled by someone else. Under these circumstances, Plaintiff utterly fails to allege facts showing that Defendant Nyquist was deliberately indifferent to Plaintiff's serious medical needs. *Farmer,* 511 U.S. at 837.

Finally, Petitioner suggests that Defendant Nyquist may have retaliated against Plaintiff for filing a grievance. Retaliation based upon a prisoner's exercise of his or her

constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Assuming that Plaintiff was engaged in protected conduct when filing his grievance, Plaintiff fails to allege that Defendant Nyquist engaged in adverse action. Instead, Nyquist simply informed Plaintiff that, by filing a grievance, he had drawn attention to the detail Nyquist had issued, resulting in the detail being cancelled, presumably by Defendant Borgerding. As a consequence, Plaintiff's retaliation claim fails at the second step.

For these reasons, Plaintiff fails to state a claim against Defendant Nyquist.

III.   Pending Motions

Also pending before the Court are two motions filed by Plaintiff. In his first motion (ECF No. 5), Plaintiff requests that the Court appoint counsel to represent him. In his second motion (ECF No. 6), Plaintiff seeks an order directing his transfer to another institution.

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will therefore be denied.

In his remaining motion, Plaintiff asks this Court to order him transferred to another institution because of alleged ongoing retaliation by both health care personnel and custody officers. The Court construes Plaintiff's motion as one seeking preliminary injunctive relief.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the

court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. First, to the extent that Plaintiff's motion is based on the alleged retaliation of Defendants who were dismissed for misjoinder or failure to state a claim, the relief he seeks is unavailable in this action. With respect to Plaintiff's assertion in his motion that health-care officials are retaliating against him, Plaintiff alleges no facts demonstrating that the only remaining defendant, Defendant Borgerding, has engaged or continues to engage in retaliatory actions. It is therefore not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his claim. It therefore appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Plaintiff fails to allege that the remaining defendant continues to take retaliatory action that would amount to irreparable harm.

Further, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary relief will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants LeBarre, Hill, Lamb, Bunting, Jeffery, Washington, Thurlby, and Nyquist will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's motion to appoint counsel (ECF No. 5) and motion for court-ordered transfer (ECF No. 6) will be denied.

An order consistent with this opinion will be entered.

Dated: December 17, 2018    /s/ Janet T. Neff
　　　　　　　　　　　　　　Janet T. Neff
　　　　　　　　　　　　　　United States District Judge